[Cite as *State v. Morris*, 2023-Ohio-3412.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-11-105 |
| | : | O P I N I O N |
| - vs - | | 9/25/2023 |
| | : | |
| MICHAEL J. MORRIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case Nos. CR2019-11-1890 & CR2020-07-0928

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**BYRNE, J.**

{¶ 1}   Michael J. Morris appeals from an entry of the Butler County Court of Common Pleas, which revoked community control and imposed prison terms.  For the reasons discussed below, we affirm.

**I. Factual and Procedural Background**

{¶ 2}   In January 2020, a Butler County grand jury indicted Morris in a 15-count

indictment, alleging that Morris committed a variety of felony theft and theft-related offenses. The charges related to accusations that Morris deposited and cashed forged checks.

{¶ 3} As part of a plea agreement, Morris subsequently entered guilty pleas to five counts of that indictment, which were all fifth-degree-felony theft charges. In September 2021, the court sentenced Morris to five years of community control. The judgment entry warned Morris that a violation of community control "shall" lead to consecutive prison terms. Morris did not appeal his conviction.

{¶ 4} In April 2022, the Adult Probation Department of Butler County, Ohio, alleged that Morris had violated the conditions of community control. At a hearing on the violation, the court found that Morris had violated conditions of community control by failing to report to his probation officer and by testing positive for methamphetamine. Nonetheless, the court continued Morris on community control with the additional requirement that Morris enter, comply with, and complete the Court Directed Addiction Treatment Program.

{¶ 5} In October 2022, the Probation Department alleged that Morris had again violated the conditions of community control, this time by being unsuccessfully discharged from Sojourner, a residential treatment facility. In November 2022, the court held a community control revocation hearing. Morris admitted to the violation. The court accepted Morris' admission. Morris then spoke in mitigation. Morris conceded to making a "very stupid, impulsive decision" by leaving Sojourner, but asked the court for a final opportunity to "make this right."

{¶ 6} In passing sentence, the court first noted that Morris' juvenile record began in 1998. The court commented that Morris' criminal record was so lengthy that the court lost count of the number of pages. The court observed that Morris' record included a burglary offense in Florida, which the court found to be a felony offense of violence. Morris stated he was jailed for just under one year on that burglary offense. The court also noted that

Morris had been to prison before for receiving stolen property. The court next observed that Morris was present at a home where the S.W.A.T. team was used to execute a search warrant, at which law enforcement recovered narcotics and firearms. In explaining his presence at the home, Morris stated that he was in the "wrong place at the wrong time" and was just there to "eat chicken wings and drink beer with my friends."

{¶ 7} The court found that Morris violated the conditions of community control. The court stated it considered the principles and purposes of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors of R.C. 2929.12. The court further found that Morris had previously committed a felony offense of violence and that Morris had an extensive prior record.

{¶ 8} The court then sentenced Morris to 12 months in prison on each of the five counts. With regard to consecutive sentences, the court found that consecutive sentences were not disproportionate to the seriousness of Morris' conduct and to the danger Morris posed to the public. The court further found that consecutive sentences were necessary to protect the public from future crime, to punish Morris, and that Morris' history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by Morris. The court then ordered three of the five counts to be served consecutively. The court ran the remaining counts concurrently for a total prison term of three years. The court also gave Morris 365 days of jail time credit. The court issued an entry revoking Morris' community control and imposing the above-described prison terms.

{¶ 9} Morris appealed from the entry revoking community control and imposing prison terms. He presents one assignment of error for our review.

{¶ 10} Before addressing the single assignment of error, we note that the facts we have described above pertain to Case No. CR2019-11-1890, which involved charges concerning theft and other theft-related offenses. At the same time that Morris was given

his initial community control sentence in Case No. CR2019-11-1890, the trial court also sentenced Morris to community control in another case that was then pending before the court. In that second case, Case No. CR2020-07-0928, Morris had pleaded guilty to aggravated possession of drugs (methamphetamine). When the trial court revoked Morris' community control and imposed consecutive sentences in Case No. 2019-11-1890, the trial court also revoked Morris' community control and imposed a prison sentence in Case No. CR2020-07-0928. However, in that second case, the trial court ran Morris' 12-month prison sentence concurrently with his sentences in Case No. CR2019-11-1890, not consecutively. When Morris appealed, he filed notices of appeal in both Case Nos. CR2019-11-1890 and CR2020-07-0928. But Morris opened his appellate brief with the statement, "This appeal involves two separate matters but only addresses the sentencing imposed in case CR2019 11 1890." Indeed, other than referring to Case No. CR2020-07-0928 in his statement of the case and facts, he has not raised any argument concerning Case No. CR2020-07-0928 in his brief. To the extent Morris purports to challenge any aspect of Case No. CR2020-07-0928 by filing a notice of appeal with respect to that case and discussing facts related to the case in his brief, we overrule that challenge and affirm the judgement in Case No. CR2020-07-0928. *See Newell v. Shumate*, 9th Dist. Lorain No. 10CA009837, 2011-Ohio-2448, at ¶ 5 (where an appellant fails to include any assignment of error in the brief, the court of appeals may summarily affirm the trial court's judgment).

## II. Law and Analysis

{¶ 11} Morris' assignment of error states:

{¶ 12} MR. MORRIS' CONSECUTIVE SENTENCES WERE UNLAWFUL.

{¶ 13} Within his assignment of error, Morris presents two issues for review. Despite the phrasing of his assignment of error, only one of those issues regards consecutive sentences; the other concerns merger of allied offenses.

- 4 -

## A. Allied Offenses

{¶ 14} Morris first argues that the trial court improperly failed to merge his theft convictions prior to sentencing. He argues that the record at the revocation hearing did not support a finding that Morris separately committed the five theft offenses.

{¶ 15} However, we need not analyze whether the theft offenses should have merged. Under the doctrine of res judicata, "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Dodson*, 12th Dist. Butler No. CA2011-02-034, 2011-Ohio-6347, ¶ 9. In *Dodson*, we found that the time to challenge a conviction based on an allied offenses argument is through a direct appeal and that res judicata bars a later attempt to present an allied offense argument in an appeal from a revocation of community control. *Id*. at ¶ 8-9.

{¶ 16} Morris could have challenged the trial court's decision not to merge his theft offenses at his original sentencing hearing or could have raised that as an issue in a timely direct appeal. But he did not. Therefore, res judicata bars Morris from challenging the failure to merge offenses in an appeal from the revocation of his community control. *Id*. at ¶ 9. *Accord State v. Painter*, 12th Dist. Clermont No. CA2012-04-031, 2013-Ohio-529, ¶ 14-19 (reaffirming *Dodson*). *See State v. Baldwin*, 12th Dist. Clermont Nos. CA2015-10-082 and CA2015-10-086, 2016-Ohio-5476, ¶ 22 ("questions concerning the validity of a sentencing entry or matters pertaining thereto should be raised on a direct appeal of that particular entry, and not through a collateral attack of the revocation of community control"); *State v. Rogers*, 12th Dist. Clermont No. CA2007-05-068, 2007-Ohio-7076, ¶ 4-6. Accordingly, Morris' first issue presented for review need not be considered further.

## B. Consecutive Sentences

{¶ 17} Morris next argues that the record fails to support the trial court's consecutive sentence findings.

### 1. Applicable Law

### a. Required Findings for Consecutive Sentences

{¶ 18} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. That statute states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 19} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future

crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

{¶ 20} "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *Bonnell* at ¶ 29, citing Crim.R. 32(A)(4). "[A] word-for-word recitation of the language of the statute is not required," though, "and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

### b. Standard of Review – Felony Sentencing Appeals

{¶ 21} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 12th Dist. Warren Nos. CA2020-07-042 and CA2020-7-043, 2021-Ohio-164, ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it *clearly and convincingly* finds either of the following:
>
> (a) *That the record does not support the sentencing court's findings under* division (B) or (D) of section 2929.13, division (B)(2)(e) or *(C)(4) of section 2929.14*, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶ 22} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038 thru CA2022-08-041, 2023-Ohio-336, ¶ 12. "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*,

12th Dist. Clermont No. CA2022-04-017, 2022-Ohio-4036, ¶ 7.  "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)."  *Richey* at ¶ 12, citing *Shiveley* at ¶ 7.  "These are the only two means that the legislature provided to defendants to challenge their consecutive sentences on appeal."  *Id.*, citing *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, at ¶ 11.

{¶ 23} In this appeal, Morris does not dispute that the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4).  Morris therefore concedes that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b).  *Richey* at ¶ 13.

{¶ 24} Instead, Morris argues—pursuant to R.C. 2953.08(G)(2)(a)—that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4).  As we explained in *Richey*, the Ohio Supreme Court recently held that "Such a challenge requires this court to review the record de novo and decide whether the record clearly and convincingly does not support the trial court's consecutive sentence findings."  *Richey* at ¶ 13, citing *Gwynne* at ¶ 1.  In conducting this de novo review, this court "essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance."  *Gwynne* at ¶ 21.

{¶ 25} However, we are constrained "to considering only those consecutive sentence findings that the trial court actually made."  *Richey* at ¶ 14, citing *Gwynne* at ¶ 21.  "Therefore, upon a de novo review of the record, this court may reverse or modify consecutive sentences—including the number of consecutive sentences imposed by the trial court[,]" but only if we clearly and convincingly find "that the record *does not* support

the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." (Emphasis added.) *Richey* at ¶ 14, citing *Gwynne* at ¶ 12. This means that we may only reverse or modify consecutive sentences when we have "a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record." *Gwynne* at ¶ 21.

{¶ 26} Before moving on to our analysis, we note that the state suggests that our standard of review of Morris' consecutive sentence argument is limited to "plain error" because Morris did not object to the imposition of consecutive sentences *after* the court imposed consecutive sentences. In support, the state cites the Ohio Supreme Court's decision in a capital case, *State v. Whitaker*, 169 Ohio St.3d 647, 2022-Ohio-2840, ¶ 166.

{¶ 27} The relevant paragraph in *Whitaker* cites another capital case, *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 152. *Hunter*, in turn, cites a third capital case, *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 377. In *Whitaker*, the appellant argued that a trial court erred by imposing consecutive sentences for noncapital counts in a capital case, and the supreme court determined that plain error review applied because the appellant failed to raise this argument at the sentencing hearing. *Whitaker* at ¶ 166. In *Hunter*, the supreme court applied plain error review to the appellant's argument that the imposition of consecutive sentences in a capital case was unconstitutional. *Hunter* at ¶ 151-155. In *Davis*, the supreme court did not even mention plain error in the portion cited in *Hunter*, but instead stated that when the appellant objected to consecutive sentences but failed to raise the specific constitutional arguments he raised on appeal, those constitutional arguments were forfeited. *Davis* at ¶ 377.

{¶ 28} While all three of these cases discuss either plain error review or forfeiture in the context of a challenge to consecutive sentences, *none* of these cases involve the type of argument before us today—that is, none involve a challenge to R.C. 2929.14(C)(4)

consecutive sentence findings under R.C. 2953.08(G)(2). It is not clear that the Ohio Supreme Court in *Whitaker*, *Hunter*, or *Davis* intended to suggest that an offender who fails to object to consecutive sentences *after* they are imposed is limited to plain error review when the offender brings an appeal challenging R.C. 2929.14(C)(4) consecutive sentence findings under R.C. 2953.08(G)(2). But even if that was the Ohio Supreme Court's intent, the standard for reviewing the imposition of consecutive sentence under R.C. 2953.08(G)(2) is now guided by *Gwynne*, 2022-Ohio-4607, which was decided *after Whitaker*, *Hunter*, and *Davis*. As explained above, *Gwynne* dictates a de novo review in this case. *Id*. at ¶ 1. In any event, even if a plain error review were required in this case, we would not find plain error in the trial court's imposition of consecutive sentences for the reasons we will discuss below.

## 2. Analysis

{¶ 29} We have conducted a de novo review of the record. The trial court's statement that Morris' criminal history was so lengthy that the court lost count of the number of pages documenting the offenses was not hyperbole. Morris' criminal record is truly extensive. Setting aside criminal counts filed against Morris that were dismissed, Morris has been convicted of around 80 different criminal counts over two decades. Morris has been convicted of numerous offenses involving violence, such as assault, attempted assault, and domestic violence. Morris has also been convicted of serious nonviolent offenses that, while nonviolent, nevertheless are crimes that cause harm to others, including grand theft, theft, attempted theft, theft by taking, burglary of a conveyance, fraudulent use of a credit card, attempted breaking and entering, receiving stolen property, and more. This is in addition to numerous convictions for drug-related crimes. With respect to many of the crimes just listed, including the violent offenses, Morris was convicted of multiple counts of those crimes. In addition to these 80 or so criminal offenses, Morris was also convicted of

a large number of relatively less serious offenses (at least when compared to crimes like assault and theft, such as driving under suspension and failure to produce a driver license), the sheer number of such relatively less serious convictions is still shocking, and demonstrates Morris' persistent disregard for the law.

{¶ 30} Of course, Morris' criminal convictions led to criminal sentences. As mentioned by the trial court, Morris went to jail for about a year for a burglary offense, and he went to prison for receiving stolen property. But that is not all. The record reveals that Morris was sentenced, on numerous occasions, to community control, to jail terms of various lengths, and to pay various fines and restitution. Different courts, in different states, gave Morris multiple "second chances;" a number of his jail sentences were suspended so that he could participate in community control or were suspended outright. On top of all of this, Morris' record references multiple community control and parole violations over the years, even before the community control violations at issue in this appeal. These violations, again, demonstrate that Morris has little to no regard for the law.

{¶ 31} All of this information supports the trial court's finding under R.C. 2929.214(C)(4) that consecutive sentences were "necessary to protect the public from future crime or to punish the offender." Morris' record, and his actions at issue in this appeal, demonstrate a more than two-decade pattern of committing criminal acts. Morris has more than demonstrated that he is a threat to the public, and that he is likely to engage in future crime. And by continuing to commit crimes, again and again, despite numerous second chances, Morris has demonstrated that consecutive sentences are necessary in order to punish him. Concurrent sentences would simply be more of the same, and would not adequately punish Morris for his theft convictions at issue here.

{¶ 32} Likewise, the record supports the trial court's finding under R.C. 2929.214(C)(4) that consecutive sentences "are not disproportionate to the seriousness of

the offender's conduct and to the danger the offender poses to the public." The "offender's conduct" at issue is Morris' perpetration of multiple theft offenses, in which Morris deposited and cashed forged checks. These were serious financial crimes. Both the bank where he deposited these checks and the individual on whose checking account he forged fraudulent checks were harmed. Given the seriousness of Morris' thefts, we conclude that the consecutive sentences imposed by the trial court were not disproportionate. This conclusion is further supported by Morris' criminal record, as described above, which shows that Morris has for many years been a serious danger to the public.

{¶ 33} For these same reasons, and because the numerous criminal sentences that Morris received over the years—lesser sentences than the consecutive sentences he received in this case—did not deter Morris from continuing to harm the public, we agree with the trial court's conclusion under R.C. 2929.214(C)(4)(c) that Morris' "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 34} In his appellate brief, Morris generally argues that all of the court's consecutive sentences findings under R.C. 2929.14(C)(4) were "unsupported by the evidence." More specifically, he argues that he merely violated community control by failing to report to probation, testing positive for illicit drugs, and for failing to complete drug treatment. He notes that his conduct that caused him to violate community control did not include additional criminal charges. He argues that his conduct of abusing substances posed no danger to the public and did not support the trial court's conclusion that there was a need to protect the public from future crime.

{¶ 35} Notably, Morris does not dispute or even refer to his extensive criminal record in the argument section of his appellate brief. Morris does not dispute that his prior record included felony offenses of receiving stolen property and burglary, and that he went to prison

for the receiving stolen property offense.

{¶ 36} We reject Morris' argument that the conduct that led to the violation of Morris' community control should have been the only consideration by the trial court in determining whether to impose consecutive sentences. As correctly pointed out by the state, the consecutive sentence analysis is directed to punishment for the original offenses, not the act that violated community control. *State v. Henderson*, 2d Dist. Montgomery No. 24849, 2012-Ohio-3499, ¶ 25 ("when community control sanctions are vacated because the offender has failed to comply with the conditions thereof, the new sentence imposed is not punishment for the failure to comply with the conditions of community control; it is punishment for the crime of which the offender was convicted"). Here, the original charges were multiple felonies. Morris was advised by the original sentencing judge in this case that he faced consecutive sentences on all five counts. In fact, that Morris received only three consecutive terms after twice violating his community control indicated a generous degree of leniency on the trial court's behalf.

{¶ 37} We also reject Morris' contention that his substance abuse issues do not demonstrate that he presents a danger to the public. It is general knowledge that substance abuse (methamphetamine use, specifically), crime, and danger to the public, are often intertwined. While the record does not provide much detail with regard to the role that Morris' drug use played with respect to his many criminal acts, we cannot ignore that, for Morris, substance abuse and other criminal acts seem to go hand in hand.

{¶ 38} For these reasons, we do not find that the record clearly and convincingly does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4)

and (C)(4)(c).[1]  *Gwynne*, 2022-Ohio-4607 at ¶ 12.  To the contrary, the record clearly supported the findings that consecutive service was necessary to protect the public from future crime or to punish Morris, that consecutive sentences were not disproportionate to the seriousness of Morris' conduct, and that Morris' history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by Morris.  R.C. 2929.14(C)(4) and (C)(4)(c).  Morris has not demonstrated any error in his sentencing.  We overrule Morris' sole assignment of error.

### III. Conclusion

{¶ 39} Res judicata precludes Morris' argument that the trial court erred by failing to merge his theft convictions.  Upon our de novo review of the record, we do not find that the record clearly and convincingly does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4).  We therefore find no error in Case Nos. CR-2020-07-0928 and CR2019-11-1890.

{¶ 40} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.

---

1. We are aware that our conclusion is awkwardly stated in the negative, or in the double negative.  But this is what is required under *Gwynne*.  *State v. Hunter*, 12th Dist. Butler No. CA2022-05-054, 2023-Ohio-1317, ¶ 30 fn.3.